EMBOSO SALES CO. v. WOOD, NATHAN & VIRKUS CO. et al.

(Circuit Court of Appeals, Second Circuit. November. 13, 1917.)

No. 24.

PATENTS ⬦328—INVENTION—PROCESS OF DRYING AND VARNISHING PRINTS.
    The Crump patents, No. 644,281, for a process of drying and varnishing prints, and No. 644,282, for the product of such process, *held* void for lack of patentable invention, in view of the Clark British patent, No. 3,357, of 1867.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Emboso Sales Company against the Wood, Nathan & Virkus Company and Frederick A. Virkus. Decree for defendants, and complainant appeals. Affirmed.

Appeal by the plaintiff from a decree declaring void for lack of invention two patents to Crump, Nos. 644,281 and 644,282, for process and product, respectively, of the following invention: The patentee described a method of printing upon paper, fabric, or other absorbent surface a design or text with size, ink, or color. While still wet, a dry powder resin was sprinkled on, which adhered to the wet size. The powder not adhering was then shaken off, and the surface heated till the particles of resin fused. The result, when it cooled, was "a crust or veneer of varnishing material."

In 1867 one Clark obtained a British patent, 3,357 of that year, describing a similar process applicable to fabrics. He spread powdered resin or sealing wax on a table, laid upon it the fabric, and pressed the pattern through the meshes of the fabric from behind, so that the resin adhered on those parts where the size came through. When dry, he then heated the fabric till the resin became fixed and assumed a brilliant colored effect.

In 1832 one Breeze took out another British patent, No. 1,714 of that year, for etching upon metal or glass. One of his methods was to make his pattern upon paper by printing in ink, covering the ink with powdered resin, and heating the combination to form a varnish on the paper. The design so made was then transferred to the metal, which might then be etched. It was proved that transfer paper to be successful must be nonabsorbent. The patents in suit were granted on February 27, 1900, and did not come into use till 1911 when one Westlake, who had discovered a similar system, which he used for an imitation of embossed printing, learned that they stood in the way of his getting a patent. He then bought the patents and organized the plaintiff in 1914. Westlake's process has had wide sale, but involves the use of a secret gum or resin. How far this has contributed to the success of the later use of the process does not appear.

Alexander & Dowell, of Washington, D. C., and John H. Hazelton, of New York City (Arthur E. Dowell, of Washington, D. C., of counsel), for appellant.

Louis W. Southgate, of New York City, for respondents.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). The best reference appears to us to be Clark's British patent, in which, although the size or mordant is put through the fabric from behind, it adheres to the resin which lies upon the table. The result when this is heated is to form a crust or varnish, which Clark properly describes as "a brilliant colored effect." As the patent in suit was by its definition applicable to a fabric as well as to any other absorbent material, it is difficult to see how Clark's product was not, at least qua fabric, a precise anticipation of the product patent, and we so decide it to have been.

As to the process patent, it is, of course, obvious that Clark's patent was not a complete anticipation, just as Judge Augustus N. Hand found, yet we think that it was too close for patentable distinction. The differences are that Crump impressed the size or ink of the pattern on the face of the paper or other absorbent surface, and then sprinkled the resin over that, while Clark pressed the size through the fabric, so that it would combine with the resin beneath. We see nothing inventive in the details of either process, once one has grasped the central idea of making the resin stick to the size, which in turn has been imposed upon the absorbent material, and then fusing them both together into "a crust or veneer." Clark, it is true, used a fabric; but Crump specified fabric among his absorbent surfaces, and paper would be only another use, the necessary modifications for which would at once occur to any one. Moreover, Clark at least gives an indication in his patent that he himself had the very details of the process in mind, which differentiates from Crump, though perhaps the passage is not clear enough to constitute an anticipation if it stood alone. The language is as follows:

"I may also employ transparent wax in grains, which I sprinkle or otherwise apply on the fabric to be ornamented; these grains or powder are then melted by the application of heat and form a transparent bead."

It seems hardly possible to interpret this in any other way than as a process by which wax is put on the front of the fabric after the size has been put on. We may agree that the size is put through from the rear; but surely, if the resin or wax is sprinkled on, it would immediately suggest the possibility that the size should be put upon the front, instead of behind.

Breeze's British patent seems to us further removed from Crump than Clark's. It is true that, if the process takes place by means of a transfer sheet, there is a stage at which, were the transfer upon absorbent paper, the product and the process would be reproduced. In fact, however, absorbent paper would not serve, and we should hesitate to hold that it was legitimate to cut in half a completed process designed to reach one result and take it as a complete anticipation of a process aimed at a different one. Yet the intermediate product was closely approached by steps substantially the same as that of Crump's process, and it seems hard to say that, if any one had wanted to make

hard and varnished letters, he would have had the least difficulty in doing it with Breeze before him. That question, however, we pass.

As in all such cases we should hesitate easily to conclude that even the variations between Crump and Clark, to say nothing of those between Crump and Breeze, could not constitute invention, if the art presented an instance of many prior efforts followed by success in the differentiating steps. Here there is nothing of the sort. Crump's patent, which did not at all suggest the use of his process for embossing, had lain quite unused for nearly all of its term, and came to any recognition whatever only when the plaintiff found it across the path of its own putative invention. It had not been of any use whatever, and it is open to question whether the extent of its exploitation during the years just before its expiration was not due to the secret gum which Westlake invented. It seems to us that we should attribute originality rather to Westlake in the discovery, if not of his gum, then of the new use to which Crump's process could be put for the imitation of die embossing by this cheap and easy substitute. That may indeed have been an inventive idea, but it could not be patented, and in any case Crump had nothing to do with it.

We agree with the District Court that the patent is void, and the decree is affirmed, with costs.